LEYDA MATA et al., Appellants, v HUNTINGTON UNION FREE SCHOOL DISTRICT, Respondent. [871 NYS2d 194]—

On June 21, 2002 the five-year-old infant plaintiff was a kindergartner at Southdown Elementary School in the defendant school district. She was injured when she fell from the third rung of a "Serpentine Trek" set of monkey bars. The accident occurred after lunch, during recess. The infant plaintiff, by her father, and her father, individually, commenced this action against the school district. The case ultimately was tried to a jury.

Evidence at trial established that the monkey bar apparatus was a component of a play system that also included a slide. Kindergartners were allowed to use the slide, but were not permitted on the monkey bars. At the time of the accident, there were two playground aides on duty, supervising two classes

of kindergartners. When the aide stationed in the area of the monkey bars stepped away to help a crying child near a swing set some 30 feet away, the infant plaintiff climbed on and then slipped off the monkey bars, sustaining injuries. The infant plaintiff testified that her hands were slippery because she had eaten pizza for lunch and had not washed the grease from her hands before going to the playground. The jury returned a verdict finding that, although the defendant school district had been negligent, its negligence was not a substantial factor in causing the accident. The plaintiffs appeal, arguing, inter alia, that the verdict was both against the weight of the evidence and fatally inconsistent.

"A jury verdict should not be set aside as against the weight of the evidence unless the evidence at trial so preponderated in favor of the appealing party that the verdict could not have been reached on any fair interpretation of the evidence . . . Where the verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (*Barnett v Schwartz*, 47 AD3d 197, 205 [2007] [citations omitted]). Moreover, a "jury's finding that a party was at fault but that that fault was not a proximate cause of the accident is inconsistent and against the weight of the evidence only when the issues are 'so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause' " (*Schaefer v Guddemi*, 182 AD2d 808, 809 [1992], quoting *Rubin v Pecoraro*, 141 AD2d 525, 527 [1988]; *see Rivera v MTA Long Is. Bus*, 45 AD3d 557, 558 [2007]). Thus, where there is a reasonable view of the evidence under which it is not logically impossible to reconcile a finding of negligence but no proximate cause, it will be presumed that, in returning such a verdict, the jury adopted that view (*see Abre v Sherman*, 36 AD3d 725, 726 [2007]).

Here, the playground aide who was stationed near the monkey bars testified that, as she moved to assist the crying child near the swing set some 30 feet away, she did not observe any children attempting to climb on the monkey bars or any children lined up to do so. She testified further that she was in the area of the swing set for only a couple of seconds when another student informed her that the infant plaintiff had been injured on the monkey bars. The jury was entitled to accept the aide's testimony and to conclude that, although the defendant school district was negligent in having only two playground aides supervising two kindergarten classes at recess, the accident, involving the infant plaintiff gaining immediate access to the monkey bars with pizza grease on her hands and falling after

successfully negotiating only two bars, happened so quickly that greater supervision would not have prevented it. Since such a view of the evidence would not have been either unreasonable or logically impossible, we presume that the jury adopted it, and uphold its verdict finding that the defendant school district was negligent but that its negligence was not a substantial factor in causing the accident (see Abre v Sherman, 36 AD3d at 726).

Our dissenting colleague would set aside the jury's verdict, in part, on the basis of our holding in Rodriguez v Elmont School Dist. (37 AD3d 448 [2007]), in which we found that the trial court properly set aside a jury verdict as fatally inconsistent and against the weight of the evidence. Rodriguez, however, is clearly distinguishable. In Rodriguez, there was no contention that there was an inadequate number of playground monitors. The jury's finding of negligence necessarily rested on the plaintiff's testimony that she and her friends had been playing for some 10 minutes on the cement or concrete cylindrical barrel from which she fell, that the monitors on duty were congregated 200 to 300 feet from the children they were supposed to be supervising and were inattentive to them, and that, although the plaintiff lay on the ground crying after the accident, none of the playground monitors noticed that she had fallen for approximately 5 to 10 minutes (id. at 448-449). And, given the jury's conclusion that the monitors were inattentive and not correctly positioned, the jury could not reasonably have accepted the defense argument that the plaintiff climbed onto, played on, and fell from the barrel so suddenly that even attentive monitors could not have prevented her injury. Thus, unlike in the case at bar, the jury's finding of negligence in Rodriguez was so inextricably linked to the cause of the accident that it was neither reasonable nor logically possible to conclude that the negligence was not a proximate cause of the plaintiff's injury (id. at 450; see Nicastro v Park, 113 AD2d 129, 137-138 [1985]).

The plaintiffs' remaining contentions are either unpreserved for appellate review or without merit. Fisher, J.P., Santucci, and Balkin, JJ., concur.

Belen, J. (dissenting and voting to reverse the judgment, grant the plaintiff's motion pursuant to CPLR 4404 (a) to set aside the jury verdict as against the weight of the evidence and as inconsistent, and remit the matter to the Supreme Court, Suffolk County, for a new trial, with the following memorandum): I respectfully dissent. The facts of this case are not in dispute. The five-year-old kindergartener plaintiff was injured when she fell off monkey bars during a recess after lunch in the yard of the elementary school she attended.

Kindergarteners were not permitted by the school to play on the monkey bars, a tacit recognition by the defendant school district of the dangers this play equipment presented, although the children were permitted to use the slide connected to the monkey bars. On June 21, 2002, the day of the plaintiff's accident, two full kindergarten classes were outside together at recess, a group comprising roughly 50 playful five-year-old children. The only supervision provided by the defendant to watch this large number of children were two school aides, one of whom was merely substituting for the regular aide.

While the aide closest to the monkey bars was distracted by a crying child, the infant plaintiff climbed up a few rungs of the monkey bars and slipped, as argued by the defendant, due to the fact that her hands were still greasy from eating pizza at lunch. Clearly, these undoubtedly overwhelmed aides had not insured that the children had washed after lunch and merely took them outside, with the infant plaintiff's hands still greasy from the pizza, and allowed them to use the play equipment.

The jury naturally found that the school district was negligent in that the supervision provided was inadequate to the task of protecting these children, yet, the jury inexplicably also found that the inadequate supervision was not the proximate cause of the plaintiff's accident. The majority reasons that this verdict should be upheld, concluding that the jury could have reasonably found inadequate supervision and yet, also have found that this accident could not have been prevented. This conclusion, however, does not survive rational scrutiny. The verdict is logically inconsistent and there is no fair interpretation of the evidence that could lead to this result as, had there been adequate supervision, by definition, no child would have been able to get anywhere near the forbidden play equipment.

The resultant verdict could only have occurred due to the confusing and misleading charge given by the court concerning the doctrine of assumption of risk. The charge suggested to the jury that a five-year old, because she may have been told that she was not supposed to play on the monkey bars, was capable of comprehending the risk of serious injury inherent in a breach of the rule. The charge suggested that this five-year old, having assumed the risk, could be as much as 100 percent liable for the accident despite the fact that the school district placed her without supervision in the vicinity of a known dangerous instrumentality.

To establish that a plaintiff assumed the risk of engaging in a particular activity, there must be evidence to demonstrate that the plaintiff understood and appreciated the nature of the risk

of pursuing the activity and voluntarily assumed that resultant risk (*see generally Rivera v Board of Educ. of City of Yonkers*, 19 AD3d 394 [2005]; *cf. Auwarter v Malverne Union Free School Dist.*, 274 AD2d 528 [2000] [11-year old found to have assumed risk of playing on jungle gym]). It is difficult to comprehend how this standard could be applied to a five year old in relation to play equipment, especially where half of the subject equipment, here the slide, was available for the children to play on without particular supervision. No evidence was presented to permit an inference that this five-year-old child comprehended this distinction.

This Court, in *Trainer v Camp Hadar Hatorah* (297 AD2d 731 [2002]), found no basis to charge the jury with the assumption of risk doctrine in a case where the seven-year-old plaintiff was left unsupervised with several other campers and was injured while playing on a swing set. The Court stated: "While the doctrine [of assumption of the risk] has been applied to children under certain circumstances (*see e.g. Auwarter v Malverne Union Free School Dist.*, 274 AD2d 528), there are certain risks that a child cannot be reasonably expected to perceive (*see Roberts v New York City Hous. Auth.*, 257 AD2d 550 [1999]). Here, the defendants failed to present proof that the infant plaintiff fully appreciated the risks involved in playing on the swing set. Therefore, the defendant's claim that the jury should have been instructed on assumption of risk [is] without merit" (*id.* at 732).

This Court's decision in *Trainer* was cited with approval by the Appellate Division, First Department, in *Roberts v New York City Hous. Auth.* (257 AD2d 550 [1999]), a case involving a six year old who climbed over a fence, essentially trespassing on the defendant's property which was adjacent to the plaintiff's school yard. The defendant was releasing boiling hot steam from its building and the infant plaintiff was pushed into the steam while "roughhousing" with another child who had also climbed over the fence. The First Department held that: "as a matter of law, the doctrine of assumption of risk, which contemplates the voluntary assumption of fully appreciated, 'perfectly obvious' risks (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]), can have no application to a six-year old under these circumstances" (*Roberts v New York City Hous. Auth*, 257 AD2d at 550).

The only possible evidence that the plaintiff perceived the risk in this case came from the rigorous cross examination of the then nine-year-old plaintiff at her trial. She was allowed to be impeached with the testimony she gave as a six year old at

the General Municipal Law § 50-h hearing and she was forced to admit that she had been told not to go on the monkey bars before the day of her accident and that it was "scary" up there. Putting aside the question of whether this child was even competent to testify, the testimony which the defendant asserts supports the jury's findings here does not by any interpretation of the law establish that this five year old "fully appreciated 'perfectly obvious' risks" (*Roberts v New York City Hous. Auth.*, 257 AD2d at 550, quoting *Morgan v State of New York*, 90 NY2d 471, 484 [1997]).

In another Appellate Division, First Department case, the infant plaintiff was also trespassing, this time onto a construction site that had been partially roped off. The child's finger was caught on chains swinging from an unsecured ramp. The Court stated: "The doctrine [of assumption of risk] is equally inapplicable in this case, where the danger was even more accessible and the risk at least as unappreciated by this five-year-old plaintiff. Instructing the jury on assumption of risk was, therefore, erroneous as a matter of law. Defendant correctly points out that plaintiff failed to object to the inclusion of the assumption of risk instruction when it was given and that, therefore, the error was not preserved for review . . . However, . . . we find the error in the charge to be so fundamental as to warrant reversal" (*Clark v Interlaken Owners*, 2 AD3d 338, 340 [2003]).

In the case at bar, the jury did not reach the assumption of risk issue having found that the defendant's negligence was not a substantial factor in causing the plaintiff's injury. However, they were charged under the erroneous proposition that this five year old may have assumed the risk of her actions and could be considered legally liable for her own injuries. Had the jury found the school district's negligence to be a substantial factor in causing the accident, they would have had to answer verdict sheet questions to determine the infant plaintiff's degree of culpability not only under a highly questionable comparative negligence standard, but improperly, under an assumption of risk standard.

Not surprisingly, there is longstanding authority for the proposition that a five-year-old child lacks the capacity to understand and cannot be held comparatively negligent for violating even basic traffic rules. For example, a five-year-old child could not be charged with comparative negligence for darting out into traffic from between parked cars (*see Dugan v Dieber*, 32 AD2d 815 [1969]), or for not obeying the "crosswalk rule" (*see Avram v Haddad*, 88 AD2d 942 [1982]). In *Branch v Stehr* (93 AD2d

849 [1983]), the plaintiff, just a few days shy of his fifth birthday, darted across the street while the crossing guard, standing on the other side of the street, stayed where she was and failed to cross over to walk the child across the street. This Court set aside the jury's verdict, finding the five-year-old plaintiff 90% comparatively negligent, as against the weight of the evidence, citing the provisions of the Hempstead Police Department regulations for crossing guards, to wit: "School crossing guards are entrusted with the community's most priceless asset, children. It is a grave responsibility because children do things on the spur of the moment, suddenly, surprisingly. Therefore, school crossing guards must be constantly alert and imaginative enough to anticipate the conduct of youth" (*Branch v Stehr*, 93 AD2d 849, 850 [1983] [internal quotation marks omitted]).

It is difficult to see why a five-year-old child could not be comparatively negligent for darting into traffic, though presumably having been warned of the obvious danger, but, as the majority finds in this case, could be held liable for climbing on play equipment in her own schoolyard. The jury, in effect, found that the plaintiff was wholly liable for her accident, despite the appalling lack of sufficient supervisory personnel, and the verdict shows a real probability of confusion on the part of the jury.

Moreover, the theory that the five-year-old plaintiff should be considered to have been comparatively negligent for not washing her hands after eating pizza is equally without merit. Responding to leading questions, the plaintiff admitted that she didn't wash, saying "I forgot because the class was lining up to go outside." Obviously, she was left unsupervised even before she went outside to play. One may fairly ask whose responsibility it is to ensure that kindergarten students wash after meals, so, among other reasons, they do not have greasy hands before going out to play, and is it fair to allow the defendant school district to escape responsibility for another instance of inadequate supervision.

This may well have been a compromise verdict occasioned by a jury instruction that placed the jury in the untenable position of having to consider the possibility of ascribing a percentage of liability to a five year old who momentarily broke a rule that she may not even have been aware of or who acted on an irresistible impulse on the spur of a childish moment.

It is submitted that this charge was both improper and not harmless error under any view of the case. Moreover, the language contained in the verdict sheet, combining assumption of risk in the same questions as ordinary negligence, clearly exacerbated the confusion.

The majority's attempt to distinguish this case from the recent determination of this Court in *Rodriguez v Elmont School Dist.* (37 AD3d 448 [2007]), appears strained. In *Rodriguez*, a nine-year-old fourth grader was injured when she fell off a cement or concrete barrel, part of the school's playground equipment. There were five playground monitors present in the school yard when she fell. There was testimony that the monitors were not paying attention for several minutes when this accident occurred, although that was disputed by the defense, who asserted the accident occurred in a matter of seconds, and even if the monitors had seen the plaintiff on the barrel, there was not enough time for them to have intervened before the accident occurred.

The *Rodriguez* jury found that the defendant was negligent, but, as here, that such negligence was not a proximate cause of the damages alleged, and thus, the jury did not reach the issue of the comparative negligence, if any, of the plaintiff. This Court affirmed the Supreme Court in setting aside the verdict as against the weight of the evidence, stating: "Here, the only theory of liability argued to the jury was that the defendant's negligent failure to have provided adequate supervision of the plaintiff was a proximate cause of her fall, specifically that non-negligent supervision would have alerted the playground monitors that the plaintiff was playing on the tube in time to have permitted corrective measures prior to the fall (*see generally Swan v Town of Brookhaven,* 32 AD3d 1012 [2006]; *Botti v Seaford Harbor Elementary School Dist. 6,* 24 AD3d 486 [2005]; *Rivera v Board of Educ. of City of Yonkers,* 19 AD3d 394 [2005]). Under all the circumstances, it was logically impossible for the jury to have found the defendant negligent without also finding that such negligence was a proximate cause of the damages alleged" (*Rodriguez v Elmont School Dist.,* 37 AD3d at 450).

As the defendant incorrectly contended in *Rodriguez,* the majority here hinges its opinion on the possibility that the plaintiff may have only briefly been on the monkey bars before she fell (although since it is undisputed that no one was watching, that is a debatable point). The very same analysis was rejected by this Court in *Rodriguez.*

Exactly as in the present case, the lack of supervision issue is most crucial *before* the accident becomes possible, where adequate supervision would ensure that the child is prevented from placing herself in a precarious position vis-à-vis the dangerous play equipment in the first instance. It is absolutely of no moment whether the child was hanging from the monkey bars for a mere second or for hours before she fell as she never should have been allowed to be there at all.

Having determined that the monkey bars were too dangerous for five-year-old children, the defendant was responsible for ensuring that its charges did not gain access to this play equipment. It can be logically inferred that someone should have been stationed at the monkey bars at all times to prevent this entirely foreseeable type of occurrence. By the same token, it is logically impossible to find that the inadequate supervision of a five-year-old child left alone in close proximity to playground equipment deemed too dangerous for such young children was not a proximate cause of the child's injury and the jury's verdict should be set aside as against the weight of the evidence and as inconsistent.